IN RE INTEREST OF D.W., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. K.W. AND D.W.,
APPELLANTS.

542 N.W.2d 407

Filed January 19, 1996.    No. S-94-642.

James Martin Davis for appellants.

Michael L. Munch, Sarpy County Attorney, and Mary Margaret Zerse Stevens for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

This appeal involves whether a juvenile court, having jurisdiction over a child who no longer lives with his parents,

can require the subject child's parents to make available for visitation with the subject child the subject child's 3–year–old sister.

The separate juvenile court of Sarpy County entered such an order, which, on appeal, was affirmed by the Nebraska Court of Appeals. This court granted the parents' petition for further review.

Upon a de novo review, we find that the juvenile court had no jurisdiction over the subject child's sister and had no authority to interfere with the parents' control over their daughter.

As a result, we remand the cause to the Court of Appeals with direction to vacate the juvenile court's order requiring the parents in this case to make their daughter available for visitation with her brother.

## STANDARD OF REVIEW

Ordinarily, juvenile court cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings. See *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994). In the present case, the appellants failed to present any assignments of error to the Court of Appeals. Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *Dike v. Dike*, 245 Neb. 231, 512 N.W.2d 363 (1994). Plain error is "error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process." *Id.* at 233, 512 N.W.2d at 365. In affirming the order of the juvenile court in this case, the Court of Appeals found no plain error.

However, controlling in this case is the rule that whether or not a question is raised by the parties concerning the jurisdiction of a lower court or tribunal, it not only is within the power but is the duty of an appellate court to determine whether the appellate court has jurisdiction over the matter before it. *Jones v. State*, 248 Neb. 158, 532 N.W.2d 636 (1995). When lack of jurisdiction in the original tribunal is apparent on the face of the record, yet the parties fail to raise that issue, it is the duty of a

reviewing court to raise and determine the issue of jurisdiction sua sponte. See *In re Interest of D.M.B.*, 240 Neb. 349, 352, 481 N.W.2d 905, 909 (1992) (where we held that "[i]f the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proven by new facts at a new adjudication–disposition hearing").

## FACTS

On April 2, 1992, the Sarpy County Attorney's office filed a petition in the separate juvenile court of Sarpy County, alleging that the subject child, D.W., who, at the time, was 13 years of age, was a child within the meaning of Neb. Rev. Stat. § 43–247(3)(b) (Reissue 1993) who deported himself so as to injure or endanger seriously the morals or health of himself or others. The petition prayed that the court issue orders concerning the care, custody, and control of D.W. At a detention hearing held the same day, the juvenile court found that D.W.'s detention was necessary and that D.W. should be placed in the temporary custody of the Nebraska Department of Social Services (DSS) pending further proceedings.

At an April 22 hearing at which D.W., his parents, his guardian ad litem, and a DSS representative were present, D.W. admitted the allegations contained in the county attorney's petition, which admissions were accepted by the court. The juvenile court found that D.W. was a child within the meaning of § 43–247(3)(b). D.W.'s custody was placed with the Sarpy County sheriff.

On May 22, another dispositional hearing was held. The court continued the matter for another dispositional hearing and ordered, in relevant part, that D.W. live with his parents, that his parents complete a parenting program, and that D.W.'s application for admission to Boys Town should proceed.

On May 28, the juvenile court issued an order remanding D.W.'s custody to the Sarpy County sheriff pending further proceedings. On the same day, the Sarpy County Attorney's

office filed a motion with the court for review of D.W.'s disposition. On September 4, the custody of D.W. was awarded to DSS so he could be placed at Boys Town. On September 10, D.W. entered Boys Town, and he remained there until August 11, 1993. After leaving Boys Town, D.W. remained in the custody of DSS but lived with his maternal grandmother.

At yet another dispositional hearing, on December 16, D.W.'s guardian ad litem orally asked the juvenile court to grant supervised visitations between D.W. and his sister, who was not yet 3 years old. The court took the motion under advisement. There appears to have been no formal pleading or summons issued for the sister nor any reason given why the juvenile court assumed jurisdiction over the sister.

At the next dispositional hearing, held on February 3, 1994, D.W.'s father voiced opposition to the proposed visitation between D.W. and D.W.'s sister, stating that he and his wife felt it was not in their daughter's best interests to have contact with D.W. at that time. The court reviewed the evidence as it pertained to D.W. and ordered 1 hour of supervised visitation each month between D.W. and his sister. There is nothing in the record reflecting that the court took into consideration the sister's best interests, and, indeed, there is no evidence in that regard except the father's statement to the court that visitation of D.W. with his sister was not in her best interests. It appears that the last time D.W. had seen his sister, she was under 6 months of age.

On June 9, 1994, the court held another dispositional hearing. The record reflects that no visitations between D.W. and his sister had occurred. The court ordered that (1) D.W. have visitation with his sister for 1 hour per month, supervised by D.W.'s therapist; (2) D.W.'s parents make their daughter available for said visitation; and (3) DSS give the siblings' parents 48 hours' notice of said visitation. We note that in none of the recited proceedings involving D.W.'s sister was a guardian ad litem or a lawyer appointed to protect her interests.

D.W.'s parents timely appealed the separate juvenile court's visitation order to the Court of Appeals. However, they failed to assign any errors in their appeal to that court. Accordingly, the Court of Appeals reviewed the matter under a "plain error"

standard. In a 2-to-1 decision, the Court of Appeals found that the juvenile court did not commit plain error in granting sibling visitation between D.W. and his sister. D.W.'s parents then timely petitioned this court for further review, which we granted.

## ANALYSIS

The Court of Appeals was correct in finding that the juvenile court had no direct statutory jurisdictional authority over D.W.'s sister. See *In re Interest of [D.W.]*, 3 Neb. App. 630, 529 N.W.2d 548 (1995). The Court of Appeals was also correct when it held that the juvenile court had jurisdiction over D.W.'s parents and that such court has broad powers to fashion remedies in the best interests of a child such as D.W. over whom it has jurisdiction. However, both the juvenile court and the Court of Appeals erred in requiring D.W.'s parents to make their daughter available for visitation with D.W. Both courts lacked personal jurisdiction over the sister. Therefore, neither court had the power to order the parents to comply with the court's visitation order.

As restated, the issue before this court is whether the power of a juvenile court over parents under its jurisdiction extends to interfering with those parents' rights over a nonadjudicated child. We find that it does not when the juvenile court lacks personal jurisdiction over the nonadjudicated child.

There is nothing in the pleadings or record of this case to justify a juvenile court's assuming jurisdiction over an uncharged and unadjudicated child such as D.W.'s sister. See, *In re Interest of N.M. and J.M.*, 240 Neb. 690, 484 N.W.2d 77 (1992); *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992).

In regard to D.W.'s sister, we are faced with an order assuming jurisdiction over her when there are no factual allegations, no evidence at an adjudication hearing, and no findings concerning the actions of the sister or actions of the sister's parents in regard to their daughter that would invoke the jurisdiction of the separate juvenile court of Sarpy County. See *In re Interest of N.M. and J.M., supra*.

It is well established in Nebraska that the relationship

between parent and child is constitutionally protected. See *Shoecraft v. Catholic Social Servs. Bureau*, 222 Neb. 574, 385 N.W.2d 448 (1986) (citing *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978)). This protection applies to the relationship between parents and each of their children individually. Just because one child in a family is adjudicated as a child coming under the Nebraska Juvenile Code does not provide a juvenile court carte blanche jurisdiction over the adjudicated child's unadjudicated siblings.

Accordingly, we hold that the separate juvenile court of Sarpy County lacked jurisdiction to require the parents of D.W. to make their daughter available for visitation with D.W. Since the juvenile court involved here lacked jurisdiction to enter the visitation order that it did, the Court of Appeals also lacked jurisdiction to affirm such order.

The decision of the Court of Appeals is reversed, and the cause is remanded to that court with direction to vacate the visitation order of the separate juvenile court of Sarpy County requiring the parents in this case to make their daughter available for visitation with D.W.

REVERSED AND REMANDED WITH DIRECTION.