IN RE GUARDIANSHIP AND CONSERVATORSHIP OF LEO BOROWIAK, AN INCAPACITATED AND PROTECTED PERSON, DECEASED. RON ROLFSON ET AL., APPELLANTS, V. DOMINIC BOROWIAK, GUARDIAN AND CONSERVATOR, APPELLEE.

624 N.W. 2d 72

Filed March 20, 2001.   No. A-00-572.

Stephen C. Hansen, of Sipple, Hansen, Emerson & Schumacher, for appellants.

John Morgan, of Morgan & Morgan, for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION

Ron Rolfson, Larry Rolfson, and Renie Cope (appellants), alleged devisees of the will of Leo Borowiak, intervened in proceedings which sought termination of the guardianship over Leo and approval of the final accounting. Leo's guardian was Dominic Borowiak, his brother. The appellants want to examine original financial records detailing Dominic's management of Leo's property since the inception of the guardianship. The Hall County Court granted the appellants access to records covering only the final 2 months of Leo's life, a period for which an annual accounting had not yet been approved, but denied access to records underlying the interim annual accountings from previous years which had already been court approved. After Dominic supplied the records for the limited timeframe, the court terminated the guardianship, "released" Dominic, and

approved the final accounting. The appellants assign as error the county court's failure to require Dominic to produce financial records generated since the guardianship's inception.

## BACKGROUND

In 1994, Dominic was appointed guardian over Leo, an ailing 77-year-old man. Although Dominic was not also formally appointed as Leo's conservator, Dominic, in effect, assumed that role by managing Leo's financial affairs, and we note that the court's order of appointment contained an express grant of the power to Dominic to receive and expend Leo's funds. Dominic's dual role is evident throughout the county court's record, in which he is consistently described as Leo's "guardian/conservator." Thus, we use that designation also and treat this as a guardianship-conservatorship.

Dominic was Leo's guardian-conservator from December 1994 until February 1999. Each year, Dominic filed an accounting of Leo's property and expenses. Dominic filed a total of six annual accountings, one for each year he served as guardian from December 1, 1994, when Dominic was appointed as Leo's guardian, through February 28, 1999, when Leo died.

While Dominic's application for approval of the 1996 accounting appears in the record, there is no court order approving the accounting. Nonetheless, the record contains an order filed March 26, 1997, approving Dominic's request for a $1,000 guardianship-conservatorship fee covering his service during 1996. The transcript does show that the county court approved each year's annual accounting through 1998.

Apparently, Leo's will was being probated in Nance County in August 1999 concurrently with these guardianship termination and final accounting proceedings in Hall County. In addition to his brother Dominic, Leo had a sister, Dellphine, and her three children are the appellants here who allege that they are devisees of Leo's will. The will is not in evidence or part of our record in any way. After Leo died, but before Dominic was released from the guardianship-conservatorship, the appellants intervened in the guardianship proceedings, alleging that they were devisees of Leo's will and that they have "an interest in making sure that the Conservatorship is properly administered."

The appellants specifically requested all bank statements, canceled checks, and deposit slips detailing Dominic's management of Leo's estate since the guardianship's inception in 1994. The appellants also requested a copy of an appraisal allegedly performed on Leo's quarter section of farmland in Nance County. The appellants alleged in one of their motions that "[t]he requested information is necessary in order for the moving parties to properly analyze and evaluate the financial accountings of the Guardian/Conservator." There is, however, no evidence or even a specific factual allegation supporting this assertion.

After Leo died on February 28, 1999, Dominic petitioned to terminate the guardianship. The record contains two different orders terminating Dominic's "guardianship/conservatorship": one on March 18, 1999, before the appellants intervened in these proceedings, and one on May 1, 2000. There is no explanation in the record or the briefs for the dual termination orders. However, we note that termination of the guardianship would not affect Dominic's obligation to account for Leo's assets. See Neb. Rev. Stat. § 30-2622 (Reissue 1995) (providing that "[t]ermination [of guardianship] does not affect [guardian's] liability for prior acts nor his obligation to account for funds and assets of his ward"). To whom Dominic owes the duty to "account" is a key analytical element in this appeal.

Well after the first termination order of March 18, 1999, the county court on November 4, 1999, held a hearing on Dominic's final accounting, his request for discharge, and the appellants' request for financial records. The court granted the appellants' request in part, ordering Dominic to give the appellants copies of (1) the 1998 appraisal of Leo's farm property and (2) the records for the time period for which Dominic's final accounting had not yet been approved by the court—from January 1 until February 28, 1999, the last 2 months of Leo's life. The court denied the appellants' request for documents covering the years 1994 through 1998, reasoning that the appellants lacked standing to question Dominic's accountings because they were not "interested parties" until Leo's death and that in any event, the prior accountings which had been approved could not be reopened, at least by the appellants, upon the ground of lack of proper notice of those prior proceedings. The trial court's com-

ments reflected that Dellphine would have such standing. The court suspended approval of Dominic's final accounting until he supplied the limited records to the appellants, which the court ordered him to produce.

On January 26, 2000, the appellants filed a request for a new trial "in the matter of the closing of this matter and the Discharge of the Conservator due to the court's overruling of the moving parties' application requesting the Court for accounting information from the Conservator." In their motion, the appellants stated that under Nebraska law, "the failure to properly provide notice of the accounting and hearing for interim accountings render any order approving such interim accounting void." Therefore, the appellants alleged that Dominic's failure to notify Dellphine of annual accounting hearings in 1994 and 1995, and his late notice to her in 1996 and 1997, thereby entitled the appellants to copies of Dominic's financial records stemming from these interim annual accountings even though they had already been court approved.

On March 8, 2000, the county court, after noting its doubts about the propriety of the motion for new trial, heard it as a "motion to reconsider." This is an appropriate point to note that there was never any evidence, documentary or testimonial, introduced in this matter. There was simply commentary from counsel, including the admission by counsel for Dominic that notice concerning the annual accountings was not sent to Dellphine in 1995 and 1996 because counsel's secretary did not know that Dominic had a sister. The court overruled the appellants' motion, again reasoning that the appellants had not become interested persons until Leo died and therefore could not allege errors in notifying Dellphine as a basis for their right to inspect records from prior approved annual accountings of Leo's property. On March 22, 2000, Dominic supplied the appraisal and the financial records according to the court's order, and on May 1, for a second time, the county court terminated the guardianship-conservatorship. This appeal followed within 30 days of the May 1 order.

## ASSIGNMENT OF ERROR

In a single assignment of error, the appellants claim that "[t]he failure to sustain the Appellants' Motion to Compel based

upon the finality of interlocutory accountings for which proper notice had not been given is error."

## STANDARD OF REVIEW

■ Appeals of matters arising under the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 through 30-2902 (Reissue 1995 & Cum. Supp. 2000), are reviewed for error on the record. *In re Conservatorship of Estate of Marsh*, 5 Neb. App. 899, 566 N.W.2d 783 (1997). When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## JURISDICTION

■ Whether a court has jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court. *Collection Bureau of Grand Island v. Fry*, 9 Neb. App. 277, 610 N.W.2d 442 (2000). We asked the parties to include in their briefing the matter of our jurisdiction over this appeal.

Dominic's position concerning jurisdiction is that the appellants filed a motion for new trial but that there has never been a ruling thereupon. As a consequence, Dominic suggests that this cause remains pending in the lower court and that we lack jurisdiction, citing *Versch v. Tichota*, 192 Neb. 251, 220 N.W.2d 8 (1974). However, in *Versch*, there was no question that the motion was a "real" motion for new trial, whereas the validity of the motion is in question here. The appellants' position is that their appeal was properly filed within 30 days of the May 1, 2000, order which was a final, appealable order.

Both the March 18, 1999, and the May 1, 2000, orders state that the guardianship is terminated and that "the guardian/conservator, Dominic Borowiak, is hereby released." In the record before us, we have found only an oral pronouncement from the bench on the discovery motion filed by the appellants. We note that an order concerning discovery is generally deemed an interlocutory order which is not appealable because the underlying litigation is ongoing until the case is concluded, at which time discovery matters can be appealed. *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989).

Furthermore, when there is no trial, a motion for new trial is not treated as such, nor does it toll the running of the statutory time for filing an appeal from the trial court's order. *State v. Plymate*, 8 Neb. App. 513, 598 N.W.2d 65 (1999). There was no evidence introduced or trial here in the instant case. An improper motion for new trial is treated only as an invitation or motion for the trial court to consider using its inherent power to vacate or modify its prior ruling. See *Breeden v. Nebraska Methodist Hosp.*, 257 Neb. 371, 598 N.W.2d 441 (1999). This is how the county court judge viewed the motion here. In the 13 plus months between the time of the March 18, 1999, order and the May 1, 2000, order, the appellants sought to intervene and requested production of certain documents underlying Dominic's annual accountings. The trial judge allowed partial discovery and then entered the second order on May 1 terminating the guardianship-conservatorship and "releas[ing]" Dominic. Thus, the May 1 order was entered after reconsideration of the March 18 order and after the county court had allowed the limited discovery for the appellants we have described. Moreover, the March 18 order did not include the time period from January 1, 1999, to the date of Leo's death on February 28, 1999, and thus it could not be a final accounting or adjudication. Interlocutory or interim accountings rendered and approved during the estate's administration are not final until there is a final settlement pursuant to notice to persons interested in the estate. *In re Estate of O'Brien*, 80 Neb. 125, 113 N.W. 1001 (1907); *Boales v. Ferguson*, 55 Neb. 565, 76 N.W. 18 (1898); *Bachelor v. Schmela*, 49 Neb. 37, 68 N.W. 378 (1896).

While we reserve the question of whether the appellants were "interested persons" entitled to notice for later discussion, there is no doubt that the March 18, 1999, order did not encompass Dominic's accounting for the last 2 months of Leo's life. That time period was covered in a subsequent accounting filed June 30, after which the appellants made their appearance in this matter and sought the discovery at issue. Because of this fact and given that the order of May 1, 2000, provides for the "release" of Dominic as the guardian-conservator, we conclude that only the order of May 1 is a final adjudication or judgment of Dominic's accounting and liability. Admittedly, the order of

May 1 is somewhat vague because it does not specifically approve the accounting for the last 2 months of Leo's life. But, given that the accounting for the last 2 months of Leo's life was then before the court, we find that the language in the May 1 order that Dominic "is hereby released" constitutes approval of Dominic's accounting for the last 2 months of Leo's life which was submitted to the court on June 30, 1999. Accordingly, the May 1 order was a final, appealable order as it affected a substantial right, see *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993), because it resolved and diminished any heir or devisees' claims with respect to Dominic's stewardship of Leo's assets during the term of the guardianship by approving his final accounting. In summary, we conclude that the motion for a new trial was only a motion for reconsideration, which does not impact this court's appellate jurisdiction. Because the order of May 1 was a final adjudication of Dominic's accountings and his liability as guardian, it is a final, appealable order, and we have jurisdiction.

## ANALYSIS

There is only one assignment of error before us, and it is extremely narrow because the appellants contest only the court's denial of access to records supporting Dominic's annual accountings for years prior to 1999. There is no assignment of error challenging the county court's approval of the interim accountings or even its "release" of Dominic as guardian. The appellants do not allege as a part of their request for records that Dominic mismanaged Leo's property or in any way breached his fiduciary duty while he served as Leo's guardian-conservator. The appellants only seek original financial records such as bank statements since the guardianship's inception in 1994 through 1998. As said, the court ordered production of the records for the first 2 months of 1999.

In *In re Conservatorship of Estate of Lindauer*, 221 Neb. 146, 376 N.W.2d 1 (1985), the Nebraska Supreme Court held that a conservator's interim accounting is an adjudication of the matters considered in connection therewith only if made upon hearing and notice to all interested parties. The appellants interpret the holding in *In re Conservatorship of Estate of Lindauer*

as meaning that the conservator must "strictly follow the notice requirements of the statute" or else "the interim accounting is not final and is subject to further scrutiny by interested persons." Brief for appellants at 11. Combining the holding in *In re Conservatorship of Estate of Lindauer* with the Legislature's mandate in § 30-2647 that a conservator "keep suitable records of his administration and exhibit the same on request of any interested person," the appellants point to Dominic's failure to properly notify Dellphine of several interim accountings and argue that these notification errors leave the interim accountings, and thus the financial records flowing from these accountings, open to their scrutiny even though the accountings have already been court approved. But, we conclude that given the narrow assignment of error and the clear language of § 30-2647, we can decide this appeal by determining whether the appellants are interested persons. We reiterate our earlier conclusion to treat Dominic as a guardian-conservator for the reasons previously stated. Moreover, § 30-2902 provides that the term "guardian" must be "taken to mean and include guardian or conservator as used in [the Nebraska Probate] [C]ode." Accordingly, we hold that Dominic has a duty to provide "suitable records of his administration" upon request by an "interested person." See § 30-2647. Obviously, this statute would be meaningless unless the county court acted to force compliance when there was a denial of access, and therefore we also hold that the probate court has the power to enforce compliance with § 30-2647 in proper situations.

The phrase "suitable records" is not defined by statute or case law. However, the annual and final accountings here, as is typically true, are merely compilations of data which list money spent, money received, certificates of deposit, and bank balances, and include a statement of assets owned by the ward. However, no original documents evidencing these things such as canceled checks, deposit slips, monthly bank statements, or certificates of deposit are included in those filings. Clearly, a fiduciary handling another's money can be expected to maintain such original records whether the ward's estate is small or sizable, as in the instant case. Thus, the term "suitable records" within § 30-2647 would logically include bank statements, can-

celed checks, deposit slips, and certificates of deposit (this list is not all inclusive) which would support the data which is placed on the forms filed with the court. Generally, "suitable records" means those papers and original documents supporting and verifying the guardian-conservator's accountings, but a more precise definition depends on the case before the court dealing with a request for compliance with § 30-2647.

The county court ruled that the appellants did not have standing to demand interim financial records because they did not become interested persons until Leo's death. However, we note that by statute, Leo's death terminates Dominic's authority and responsibility as guardian, but does not "affect his liability for prior acts nor his obligation to account for funds and assets of his ward." § 30-2622. This statute raises the question of to whom Dominic must account upon the termination of the guardianship-conservatorship by Leo's death. Of course, the appellants are clearly suggesting that as devisees under Leo's will, Dominic must account to them by displaying his records upon their request because they are "interested persons." See § 30-2647. The question of whether the appellants are interested persons, and therefore entitled to receive Dominic's "suitable records of his administration," is essentially one of standing.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000). To have standing, a plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996).

"Interested persons" under the Nebraska Probate Code are defined as

heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may be affected by the proceeding. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be deter-

mined according to the particular purposes of, and matter involved in, any proceeding.

§ 30-2209(21). In *In re Estate of Statz*, 144 Neb. 154, 163, 12 N.W.2d 829, 835 (1944), the Nebraska Supreme Court held:

> The general rule is that any person beneficially interested in the estate embraced in an administration account may cite the executor or administrator to file an account, object, or file objections to the terms or matters contained in the account, and the representative may in a proper proceeding be surcharged with losses occurring because of a breach of trust. [Citations omitted.] Legatees and distributees come within the scope of this rule, and when they positively allege their status in a petition or objections to the account, such objections should be disposed of in a legal manner and not be summarily dismissed on the assumption without proof that the objectors are not heirs, legatees, or distributees.

Section 30-2209(21) and *In re Estate of Statz* make it clear that devisees are "interested persons" under the Nebraska Probate Code. Moreover, the last sentence from the above quote from *In re Estate of Statz* makes it clear that the allegation of status as a devisee is enough and that formal proof is not needed. Thus, while we admit to being somewhat troubled by the conclusionary allegations and the lack of proof concerning the appellants' status, it appears that the above holding must allay our concerns.

Once Leo died, Leo's testamentary gift to the appellants vested, and as devisees, the appellants had a right to the "suitable records" of Dominic's administration. That right, without the ability to intervene in the proceedings to approve Dominic's final account, would be empty. Therefore, while we recognize that some of the annual accountings may well be "finally approved," a matter we need not decide, we must remember that the narrow focus of this appeal concerns a discovery matter.

"[O]n appellate review, decisions regarding discovery are generally reviewed under an abuse of discretion standard." *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 39, 567 N.W.2d 560, 566 (1997). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* The party asserting

error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991).

The appellants have alleged their status as devisees of Leo's will. See *In re Estate of Statz, supra* (beneficiary's objections to accounting "should be disposed of in a legal manner and not be summarily dismissed on the assumption without proof that the objectors are not heirs, legatees, or distributees"). The appellants' allegation that they are devisees of Leo's will is enough, particularly given that such allegation is not denied, to give them standing to move for discovery of the documents underlying the accountings. The county court's reasoning that discovery would be limited to only the last 2 months of Leo's life, a period for which an accounting had not yet been approved, is flawed given the broad language of § 30-2647. And, as devisees, they are clearly "interested parties." Therefore, the denial of the requested discovery is untenable and an abuse of discretion, and we vacate the county court's order and remand the cause to that court for the entry of an order granting the appellants' discovery request.

Although the question of "then what" is palpably present, given the "release" of Dominic, an appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994). Given the extremely narrow assignment of error which we earlier quoted, and the absence of an evidentiary record, we decide the discovery issue the appellants have presented to us, but avoid the question of whether the interim accountings were made upon notice and hearing to all interested persons which would adjudicate Dominic's liabilities. See *In re Conservatorship of Estate of Lindauer*, 221 Neb. 146, 376 N.W.2d 1 (1985).

However, there is still the matter of the release of Dominic in a proceeding in which disclosure of records and documents which form the basis for the accountings, both interim and final, was incorrectly denied to interested parties. While the appellants did not assign error to this action by the county court and although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court

may, at its option, notice plain error. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

In this situation, our holding that the appellants are entitled to see the bank statements and other original documents would be a meaningless decision if the county court's final adjudication releasing Dominic and approving the final accounting was allowed to stand. The appellants could be in the position of finding mistakes, or worse, in the handling of Leo's property after seeing the documents, but be faced with the claim that the court's order of May 1, 2000, prevents any action on their part to hold Dominic accountable. That result would make the judicial process fundamentally unfair and damage the integrity of the system for the handling of the property of protected persons, given that the appellants sought the records in advance of any final release of Dominic for the very purpose of checking the accuracy of the accountings and that they were wrongfully denied access to the records. This is not to suggest that we see anything improper in the accountings. But, we recognize that the accountings are only Dominic's summaries of what has transpired with Leo's estate. Nebraska law allows the appellants, given that they are interested parties, the right to see the records underlying those accountings, and that right would be meaningless if they were foreclosed by the county court's release of Dominic from doing something about any wrongdoing or errors that those records might disclose.

## CONCLUSION

We remand this cause to the Hall County Court with directions to enter the appropriate orders providing for the prompt disclosure of the original records sought by the appellants' motion, which shall encompass the time period from the inception of the guardianship-conservatorship to the time of Leo's death. The order of May 1, 2000, terminating the guardianship-conservatorship and "releas[ing]" Dominic is hereby vacated. Such further proceedings as are necessary to formally approve the final accounting and release Dominic as the guardian-

conservator shall be promptly conducted after the discovery ordered herein has been accomplished.

ORDER VACATED, AND CAUSE REMANDED WITH DIRECTION.