STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE, V.
MICHELLE SOTO ET AL., APPELLEES AND CROSS-APPELLANTS,
AND TONI POUNDER ET AL., APPELLEES.

659 N.W.2d 1

Filed April 1, 2003.    No. A-02-288.

Don Stenberg, Attorney General, and Tom Stine for appellant.

Martin J. Troshynski, of Baskins, Pederson & Troshynski, for appellee Michelle Soto.

James E. Schneider, guardian ad litem, for the natural children.

Jay C. Elliott, guardian ad litem, for the stepchildren.

HANNON, INBODY, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

The State of Nebraska appeals from the order of the Nebraska Workers' Compensation Court review panel affirming an award of workers' compensation death benefits to dependents of James Soto. For the following reasons, we affirm.

## BACKGROUND

James was killed in an automobile accident on July 13, 1999, while employed by the State as a highway maintenance worker. The accident arose out of and occurred in the course of James' employment with the State. At the time of the accident, James' average weekly wage was $396.72. The following individuals claim entitlement to workers' compensation death benefits in this matter: Michelle Soto as the spouse of James; Toni Pounder, Becky Pounder, and Steve Perez as stepchildren of James (collectively the stepchildren); and Jeremy Soto and Nickole Soto as natural children of James (collectively the natural children). The State paid benefits to Michelle, Becky, and Steve from July 14, 1999, through October 10, 2000; to Toni from July 14, 1999,

through April 22, 2000; and to each of the natural children from July 14, 1999, through October 24, 2000. A wrongful death action against the third party wrongdoer was settled by James' estate on May 23, 2000, and additional litigation ensued in county court concerning the distribution of those settlement proceeds.

On September 28, 2000, the State filed a petition in the Nebraska Workers' Compensation Court, seeking a determination of the dependency of those claiming an interest in the workers' compensation benefits arising from James' death. The State served requests for admission directly on Michelle and on the stepchildren on January 5, 2001, which, if admitted, would have essentially indicated that they were not James' dependents. Michelle's counsel had not yet entered a formal appearance in the workers' compensation case at that time, although the State was allegedly aware both of Michelle's representation by counsel in the wrongful death action and that Michelle would be represented by the same attorney in the workers' compensation matter. Michelle's counsel moved to a different law firm on January 1 and notified Michelle of counsel's change in law firms as of that date. Michelle mailed the requests for admission, which had been directed to her, to her counsel's former office, where the requests were received in early February. Her counsel received the requests for admission at the new law firm on February 12. The requests directed to Michelle were then answered and served on the State on February 13, along with a letter explaining the delay. Michelle's answer denies each of the requests for admission directed to her. The stepchildren did not serve answers to the requests for admission prior to or during trial, which was held on May 15.

At trial, the State offered the requests for admission served on Michelle and the stepchildren, which requests were received into evidence over objections by Michelle and the stepchildren. Michelle's counsel orally moved for leave to file Michelle's answers to requests for admission "out of time," which motion was granted by the trial court over the State's objection. The court then received Michelle's February 13, 2001, responses to the requests for admission into evidence, which responses denied the requests. The guardian ad litem, who was appointed by the court on March 8 to represent the stepchildren, indicated that prior to

trial, he had not been aware of the outstanding discovery requests addressed to the stepchildren. The guardian ad litem also orally moved for leave to file responses to the requests for admission directed to the stepchildren, which motion was granted over the State's objection. The record before us contains exhibits 11 through 13, the responses of Toni, Becky, and Steve to the State's requests for admission, in which each of the stepchildren denies the request directed to him or her. These responses were served on the State on May 16. The record also contains a stipulation and an order amending the bill of exceptions to include these exhibits.

Michelle testified that she married James in December 1998 and was married to him at the time of his death in July 1999. Michelle further testified that at the time of James' death, she was living with him in the same household, and that she was dependent on James for her livelihood during their marriage. Michelle testified that her three children (the stepchildren) lived with her and James between May 1998 and July 13, 1999, in a mobile home owned by James; that the stepchildren were financially supported by James during that period, with more than half of their financial support coming from James; and that as of July 13, James was primarily responsible for shelter, food, and clothing for the stepchildren. Michelle also indicated, however, that Toni and Becky worked part time at Sitel prior to James' death and that the girls used the money earned through this employment to purchase their own clothes, for personal expenses, and for "fun money."

Toni was born on April 23, 1982, and was age 17 at the time of James' death. Toni confirmed that in May 1998, she started living with her mother and James in the trailer owned by James, and that she was living there with them at the time of James' death. Prior to May 1998, Toni was living in a foster home. Toni testified that during the time she lived with James and Michelle, Toni was financially dependent on James for shelter, food, and "just basically living." She also indicated that James "paid the bills and stuff." Toni indicated that she worked part time at Sitel as a telemarketer between May and July 1999, making $7 an hour and earning $105 per week. Toni testified that her sister, Becky, worked at Sitel during this same period and that they "didn't even go back — after [James] died [they] didn't even go back." Toni

indicated that Becky also earned approximately $105 per week while working at Sitel. Toni testified that she used the money she earned at Sitel for "fun money" and "clothes and stuff like that."

Becky was not present at trial because she was incarcerated in Lincoln. The record indicates that Becky was born May 9, 1983, making her 16 years old at the time of James' death.

Steve was born October 9, 1984. He was 14 years old at the time of James' death. Steve testified that he began living with James and Michelle in May 1998 and that he had previously been living in a foster home with his sisters, Toni and Becky. Steve's testimony indicates that between May 1998 and July 1999, he was in school, was not employed anywhere, and was supported by James.

As to James' natural children, the record indicates that Jeremy was born on January 2, 1984, and was age 15 at the time of James' death. Nickole was born on August 3, 1986, and was almost 13 years old at the time of James' death. The State did not challenge Jeremy and Nickole's entitlement to benefits at trial.

The trial court entered an award on June 8, 2001. The trial court found that at the time of James' death, he lived with his wife, Michelle, and Michelle's three children, the stepchildren. The trial court found that as of July 13, 1999, the stepchildren were dependents of James, that they lived in a home owned by James, and that except for the stepchildren's earnings from part-time work, which earnings were spent on "fun things," James was their source of support and maintenance. The court found that James was the natural father of Jeremy and Nickole and that they were entitled to benefits. The trial court found that Michelle, as James' wife, was to receive the sum of 55 percent of James' average weekly wage of $396.72, or $218.20, per week during her widowhood and that the natural children and the stepchildren were to receive the total sum of $79.34 per week, to be split equally among them. The benefits to the natural children and the stepchildren were to terminate for each child as he or she turned 18, unless the child was enrolled as a full-time student in any accredited educational institution, in which case the benefits for that child would continue until the child ceased to be so enrolled or reached the age of 25. The court also specified how the children's benefits were to be recalculated as individual children

ceased to be eligible for the benefits and what was to occur in the event of remarriage by Michelle. The court gave the State credit for benefits already paid.

With regard to the State's requests for admission directed to Michelle and the stepchildren that were not timely answered, the trial court found that the compensation court is not bound by the usual common-law or statutory rules of evidence or by any technical rules of procedure. The court further found that while the failure to answer a request for admission within 30 days requires other courts to find the facts admitted, the compensation court is not required to do so. The court also noted that it had granted Michelle's and the stepchildren's motions to file answers out of time.

Finally, the court addressed the beneficiaries' claims to penalties and attorney fees. The compensation court declined to order a penalty and attorney fees because it found the existence of a reasonable controversy in an unsettled question of law related to the distribution of the wrongful death proceeds, which question is not relevant to our resolution of the appeal in this workers' compensation case.

The State filed an application for review with the review panel of the compensation court on June 22, 2001, and the natural children apparently filed a cross-appeal from the trial court's award. Michelle did not file an application for review. The review panel entered an order on January 31, 2002, affirming the award entered by the trial court. The review panel noted that the State directed requests for admission to Michelle and the stepchildren on January 5, 2001; that Michelle filed responses denying the requests on February 13; and that no responses had been filed on behalf of the stepchildren as of trial on May 15. The review panel also noted that the stepchildren were unrepresented at the time the State served these discovery requests and that their court-appointed guardian ad litem was unaware of the outstanding discovery requests on the date of trial. The review panel noted its awareness of Neb. Ct. R. of Discovery 36 (rev. 2000) and *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000) (holding party's failure to make timely and appropriate response to request for admission constitutes admission of subject matter of

request, which matter is conclusively established unless, on motion, court permits withdrawal of admission), but given the circumstances and Neb. Rev. Stat. § 48-168(1) (Reissue 1998) (stating Nebraska Workers' Compensation Court is not bound by usual common-law or statutory rules of evidence or by any technical or formal rules of procedure), the review panel was unable to conclude that the trial court erred as a matter of law in allowing the stepchildren's counsel to withdraw the admissions. The review panel noted that the State could have moved for a continuance, but did not.

With regard to the determination that the stepchildren were dependent, the review panel noted that Neb. Rev. Stat. § 48-124 (Cum. Supp. 2002) distinguishes between a natural child, conclusively presumed dependent, and a stepchild under age 18 who must demonstrate "actual dependence" as defined in the statute. The review panel noted that the evidence of actual dependency in this case was "far from abundant," with "minimal [being] more accurately descriptive," but found enough evidence that it could not say that the trial court erred as a matter of law or was clearly wrong in determining that the stepchildren were actually dependent on James at the time of his death.

As to the cross-appeal filed by the natural children, the review panel merely noted that for the reasons already stated, it was affirming the award of the trial court.

The review panel also found that because the State had appealed and had received no reduction in the prior award, the State should pay to each defense counsel an attorney fee of $1,000, together with interest on any unpaid compensation as allowed by law.

The State has now appealed from the review panel's order of affirmance on review, while Michelle and the natural children have cross-appealed.

## ASSIGNMENTS OF ERROR

The State asserts, consolidated and restated, that the trial court erred in (1) handling the State's requests for admission; (2) finding that Michelle, Toni, Becky, and Steve were dependent on James as of July 13, 1999; and (3) failing to render a reasoned decision.

In the natural children's cross-appeal, they assert assignments of error essentially identical to the second and third errors asserted by the State, as consolidated and restated above, as those errors relate to the award in favor of the stepchildren. Their arguments on cross-appeal are considered below, together with the arguments of the State.

■ In Michelle's cross-appeal, she asserts that the trial court erred in holding that there was a reasonable controversy as to whether the State could stop making benefit payments and that Michelle was not entitled to fees and penalties. Michelle did not file an application for review with the review panel of the compensation court. Because Neb. Rev. Stat. § 48-179 (Cum. Supp. 2002) provides that a party waives all errors of the workers' compensation trial judge not specifically assigned to the review panel in an application for review, an appellate court cannot consider errors of the trial judge which were not assigned to the review panel. *Cochran v. Bill's Trucking*, 10 Neb. App. 48, 624 N.W.2d 338 (2001). Michelle's assignment of error was not assigned to the review panel in an application for review, and therefore, her assignment is deemed waived and will not be addressed by this court.

## STANDARD OF REVIEW
■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Vega v. Iowa Beef Processors*, 264 Neb. 282, 646 N.W.2d 643 (2002). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Vega v. Iowa Beef Processors, supra.*

On appellate review, decisions regarding discovery are generally reviewed under an abuse of discretion standard. *In re Guardianship & Conservatorship of Borowiak*, 10 Neb. App. 22, 624 N.W.2d 72 (2001). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Gallner v. Hoffman*, 264 Neb. 995, 653 N.W.2d 838 (2002).

## ANALYSIS

*Discovery Issues.*

The State asserts that the trial court erred in its handling of the State's requests for admission. Specifically, the State contends that the trial court erred by finding that the Nebraska Rules of Discovery did not apply to the Workers' Compensation Court, by failing to find that the subject matter of the requests had been conclusively established as a matter of law, and by allowing Michelle and the stepchildren to withdraw their admissions and file substitute answers. We conclude that while the trial court erred in concluding that the discovery rules do not apply to the compensation court, the trial court correctly allowed Michelle and the stepchildren to withdraw their admissions and file substitute answers, and that the State was not prejudiced thereby.

In concluding that the compensation court is not bound by the Nebraska Rules of Discovery, the trial court relied in part on § 48-168(1), which provides:

> The Nebraska Workers' Compensation Court shall not be bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided, but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act.

We also note Neb. Rev. Stat. § 48-163(1) (Cum. Supp. 2002), which provides:

> The Nebraska Workers' Compensation Court, by a majority vote of the judges thereof, may adopt and promulgate all reasonable rules and regulations necessary for carrying out the intent and purpose of the Nebraska Workers' Compensation Act and shall administer and enforce all of the provisions of such act, except such as are committed to the Supreme Court.

Finally, we note Workers' Comp. Ct. R. of Proc. 4 (2002), which states, in relevant part, that "[d]iscovery in the Workers' Compensation Court shall be pursuant to the Nebraska Discovery Rules For All Civil Cases promulgated by the Nebraska Supreme Court." Accordingly, the trial court was incorrect in concluding that it was not bound by the Nebraska Rules of Discovery.

Neb. Ct. R. of Discovery 36(a) is applicable in the present case and provides in relevant part:

> Each matter of which an admission is requested shall be separately set forth by the party making the request, and shall be repeated by the responding party in the answer or objection thereto. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . .

With regard to the effect of admissions, rule 36(b) provides in part:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. The court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him or her in maintaining his or her action or defense on the merits.

The Nebraska Supreme Court has held that a party's failure to make a timely and appropriate response to a request for admission constitutes an admission of the subject matter of the request, which matter is conclusively established unless, on motion, the court permits withdrawal of the admission. *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85

(2000). The *Schwarz* court also held that rule 36 is not self-executing, but requires that a party, claiming another party's admission by failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer or object to the request and must subsequently offer the request for admission as evidence. However, rule 36 is self-enforcing, without the necessity of judicial action to effect an admission which results from a party's failure to answer or object to a request for admission. *Id.*

While the State proved both the service of the requests for admission and the failure of Michelle and the stepchildren to timely respond, and offered the requests for admission into evidence, counsel for both Michelle and the stepchildren made oral motions at trial to withdraw those admissions and file late responses, which motions were granted by the trial court. The State argues that it was prejudiced by Michelle and the stepchildren's withdrawal of their admissions. With regard to Michelle, the State argues that it was placed "in the precarious position of having to respond to the substantive content of Michelle's allegations during closing argument." Brief for appellant at 19. The State was aware prior to trial, however, that Michelle intended to deny the requests for admission. In fact, Michelle served responses on the State on February 13, 2001, 3 months prior to trial, in which responses she denied each of the requests directed to her. The State also complains that Michelle's counsel's affidavit explaining the delay in responding to the requests addressed to Michelle was not provided to the State prior to trial. Michelle's counsel, however, sent a letter to the State on February 13, along with Michelle's responses, setting forth the same explanation for the delay as found in the affidavit admitted into evidence at trial. In this letter, Michelle's counsel also stated:

> If you are going to take the position that the responses are not timely made, I'd appreciate it if you would let me know about that, so I can file an appropriate motion with the court to have the matter addressed. My hope is that this is a non-issue, however. I will take your silence on the matter to indicate that is the case.

Although Michelle did not file any formal written motion to withdraw her admissions prior to trial, the State was clearly

aware prior to trial of Michelle's position opposing the State's reliance on her admissions. The State was also aware prior to trial of the nature of Michelle's responses to the requests for admission. The record does not indicate that the State conducted any further discovery prior to trial, nor does the record show the response, if any, made by the State to the February 13 letter from Michelle's counsel. At trial, after the court granted Michelle's motion, allowed her to withdraw her admissions, and accepted into evidence her responses to the requests for admission, Michelle took the stand and testified concerning her marriage to and her dependence on James at the time of his death. Subsequently, the State conducted a thorough cross-examination of Michelle on these issues. We cannot say that the State was prejudiced by the trial court's decision to allow Michelle to withdraw her admissions, file late responses, and testify at trial concerning her dependency on James.

With regard to the stepchildren, the record indicates that the State's requests for admission were served on the stepchildren prior to the appointment of a guardian ad litem to represent their interests and that the appointed guardian ad litem was not made aware of the outstanding discovery requests until the trial on May 15, 2001. At the start of trial, the court granted the guardian ad litem's motion to withdraw the stepchildren's admissions and file late responses. Testimony was heard subsequently from both Toni and Steve concerning their dependency on James. Becky was incarcerated at the time of trial and therefore not present, but testimony was given by Toni concerning Becky's dependency and by Michelle concerning the dependency of all three stepchildren.

The State objected to testimony of Michelle, Toni, and Steve on the bases of relevance, foundation, form, and hearsay; however, the State does not assert error with respect to the court's admission of the testimony in these regards. Rather, the State merely argues that that testimony should not have been admitted because the lack of dependency had already been conclusively established. The State had the opportunity to cross-examine all three witnesses thoroughly on the issues raised in their direct testimony. The actual responses made by the stepchildren, served on the State the day after trial, simply deny the requests for admission addressed to them and do not present any factual information beyond that

testified to at trial. Given the circumstances, we cannot say that the State was prejudiced by the court's decision to allow the stepchildren to withdraw their admissions, file late responses, and testify concerning their dependency.

We also note that the State did not seek a continuance after the court allowed Michelle and the stepchildren to withdraw their admissions and file late responses to the State's requests. Continuance is ordinarily the proper method for dealing with a claim that there has been a failure to disclose in a timely manner. *Kane v. Parry*, 24 Conn. App. 307, 588 A.2d 227 (1991); *Brown v. Hansen*, 1 Neb. App. 962, 510 N.W.2d 473 (1993). See, *Rullo v. General Motors Corp.*, 208 Conn. 74, 543 A.2d 279 (1988); *Whitney v. Buttrick*, 376 N.W.2d 274 (Minn. App. 1985); *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D. 1982); *State v. Higginbotham*, 110 Wis. 2d 393, 329 N.W.2d 250 (Wis. App. 1982).

In Nebraska criminal law, when a continuance will cure the prejudice caused by belated disclosure of evidence, a continuance should be requested by counsel and granted by the trial court. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). Similarly, in civil cases, with regard to different discovery rules than are at issue here, when a party has not complied with the discovery rule governing interrogatories, Neb. Ct. R. of Discovery 26(b)(4)(A)(i) (rev. 2000), or the rule governing supplemental responses, rule 26(e)(1)(B), an adverse party must make an appropriate objection, move to strike certain testimony, request a continuance, or move for a mistrial. *Cohen v. Papio-Missouri River NRD*, 8 Neb. App. 807, 602 N.W.2d 49 (1999). The State had the opportunity to remedy any alleged surprise in the content of the testimony of Michelle, Toni, and Steve by seeking a continuance, which it did not. Any objections based on surprise or tactical maneuvers are deemed waived. See, *State v. Harris, supra*; *Cohen v. Papio-Missouri River NRD, supra*.

Because the State cannot now complain that it was prejudiced by Michelle's and the stepchildren's withdrawals of their admissions, the trial court did not abuse its discretion in allowing them to file late responses and in receiving further evidence with respect to the dependency of Michelle and the stepchildren. See, *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993); *Mason*

*State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990). The State's assignment of error is without merit.

*Determination of Dependency.*

If an employee receives injuries causing death, the employee's dependents are entitled to workers' compensation benefits. See, Neb. Rev. Stat. § 48-109 (Reissue 1998); Neb. Rev. Stat. §§ 48-122 through 48-124 (Reissue 1998). Although the State and the natural children differ in the arguments and reasoning used to support their assertions, they both assert that the compensation court erred in finding that the stepchildren were dependents of James and were entitled to workers' compensation death benefits. In addition, the State argues similarly with respect to Michelle. Section 48-124, the version in place at the time of James' death, provided with regard to those presumed dependent:

> The following persons shall be conclusively presumed to be dependent for support upon a deceased employee: (1) *A wife upon a husband with whom she is living* or upon whom she is actually dependent *at the time of his injury or death*; (2) a husband upon a wife with whom he is living or upon whom he is actually dependent at the time of her injury or death; and (3) *a child or children under the age of eighteen years*, or over such age, if physically or mentally incapable of self-support, or any child eighteen years of age or over who is actually dependent, or any child between eighteen and twenty-five years of age who is enrolled as a full-time student in any accredited educational institution.

(Emphasis supplied.)

Section 48-124 defined "child" to include

> a posthumous child, a child legally adopted or for whom adoption proceedings are pending at the time of death, an actually dependent child in relation to whom the deceased employee stood in the place of a parent for at least one year prior to the time of death, *an actually dependent stepchild*, or a child born out of wedlock. Child shall not include a married child unless receiving substantially entire support from the employee.

(Emphasis supplied.)

With regard to "actual dependency," § 48-124 provided in part:

Actually dependent shall mean dependent in fact upon the employee and shall refer only to a person who received more than half of his or her support from the employee and whose dependency is not the result of failure to make reasonable efforts to secure suitable employment. . . . Questions as to who constitute dependents and the extent of their dependency shall initially be determined as of the date of the accident to the employee . . . .

With regard to Michelle, the uncontroverted evidence admitted at trial shows that she was married to James and was living with and financially dependent upon him at the time of his death. The trial court was not clearly wrong in finding that Michelle was James' wife and lived with him at the time of his death. With regard to the stepchildren, Michelle testified that at the time of James' death and for over 1 year prior to his death, the stepchildren resided with her and James in James' home, were financially supported by James with more than half of their financial support coming from James, and were primarily dependent on his support for day-to-day living necessities. Both Toni and Steve testified that they were living with James and Michelle at the time of James' death and were dependent on James for support. While the evidence reflected that Toni and Becky worked part time prior to James' death, their earnings were spent on personal items such as clothing and entertainment, while their living expenses such as rent, utilities, and groceries were paid by James. The trial court found that the stepchildren were living with James and Michelle at the time of James' death, that the stepchildren were James' dependents as of his death, and that aside from the stepchildren's part-time work, which earnings were spent on "fun things," James was their source of support and maintenance. In other words, the trial court impliedly found that the stepchildren qualified as "actually dependent" by virtue of receiving more than half of their support from James. These factual findings of the trial court are supported by the record and are not clearly erroneous. The State's assignment of error is without merit.

The natural children assert that the stepchildren were not James' dependents because he had not "stood in the place of a

parent" to them for 1 year at the time of his death as set forth in § 48-124. The natural children argue that the 1-year requirement in the definition of "child" applies to those who are "actually dependent stepchild[ren]." We disagree. The definition of "child" clearly lists several different relationships, in the disjunctive, that will qualify an individual as a "child" under § 48-124. A plain reading of this statutory language shows that "an actually dependent stepchild" is a separate qualifying relationship from that between the deceased employee and "an actually dependent child in relation to whom the deceased employee stood in the place of a parent for at least one year prior to the time of death." It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *In re Estate of Eickmeyer*, 262 Neb. 17, 628 N.W.2d 246 (2001).

Even if this 1-year requirement were applicable to the stepchildren, the evidence indicates that they would fall within that requirement. The fact that Michelle did not marry James until December 1998 does not prevent James from standing "in the place of a parent" to these stepchildren for more than 1 year prior to his death. The evidence shows that the stepchildren lived with and were supported by James between May 1998 and his death in July 1999 and that the stepchildren were actually dependent on him during that period. Accordingly, the stepchildren fit within the definition of "child" not only because they were his stepchildren at the date of his death but also because he stood in the place of a parent to them for more than 1 year prior to his death. As indicated in our analysis above, the trial court was not clearly erroneous in determining that Michelle and the stepchildren were dependents of James at the time of his death. The natural children's assignments of error to the contrary are without merit.

Finally, we note that a certain amount of evidence in the record concerned the status of Michelle and the stepchildren following James' death. This evidence is not relevant to the initial determination of dependency, which is made at the time of an employee's death as per § 48-124, and neither the State nor the natural children have raised issues on appeal with regard to the

trial court's findings concerning the cessation of benefits. See § 48-122.01(5), (8), and (9) (dealing with cessation of workers' compensation death benefits).

## Rule 11 Reasoned Decision.

Finally, the State and the natural children assert that the trial court erred in failing to render a reasoned decision under Workers' Comp. Ct. R. of Proc. 11 (2002). The State argues that the trial court did not explain its rationale for concluding that Michelle and the stepchildren were dependents of James and that the trial court did not set forth what evidence it found that showed that Michelle and the stepchildren had met their burden to prove dependency. Rule 11A provides:

> All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

The trial court issued a three-page award on June 8, 2001, containing its findings of fact and conclusions of law. It found that at the time of James' death, he lived with Michelle and the stepchildren. The trial court further found that as of July 13, 1999, the stepchildren were dependents of James, that they lived in a home owned by James, and that outside of the stepchildren's earnings from part-time work, which earnings were spent on "fun things," James was their sole source of support and maintenance. The trial court then outlined the amount and distribution of the award among the parties and detailed the conditions under which payments would cease. In reviewing the trial court's decision, the review panel stated that the evidence of actual dependency was "far from abundant," with "minimal" being more accurately descriptive, but the review panel nonetheless was unable to say that the trial court was clearly wrong in its decision as to dependency.

While we agree with the review panel that the evidence concerning dependency in this matter is minimal, as noted above, the

factual findings of the trial court are supported by the record and are not clearly erroneous. With regard to the requirements of rule 11, we note that the present case is unlike many workers' compensation cases wherein the trial court is called on to sort through numerous medical records and a myriad of conflicting medical opinions. In those cases, it is essential for purposes of providing meaningful appellate review that the trial court, in concluding that an employee is or is not entitled to compensation, specify what medical evidence it relied upon. In the present case, the evidence in the record, while minimal, closely corresponds with the findings of fact made by the trial court. The evidence upon which the trial court relied was readily identifiable in the record, being, for the most part, uncontradicted. Obviously, the trial court resolved in favor of Michelle and the stepchildren any contradictions that did exist within the evidence as it was entitled to do as trier of fact. The factual findings made by the trial court in this case have the effect of a jury verdict, and we have not disturbed them on appeal as they are not clearly wrong. See *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). The trial court clearly identified the relevant factual findings that went into its decision concerning dependency. Given the content and nature of the evidence in the record before us, it is clear upon which evidence the trial court relied to reach each of those factual findings. Accordingly, we conclude that the trial court provided a reasoned decision in compliance with rule 11 and that the State and the natural children's assignments of error are without merit.

## CONCLUSION

The trial court incorrectly concluded that the Nebraska Rules of Discovery are not applicable to the actions of the Nebraska Workers' Compensation Court; however, because the State was not prejudiced by Michelle's and the stepchildren's withdrawals of their admissions, the trial court did not abuse its discretion in allowing them to file late responses and in receiving further evidence with respect to the dependency of Michelle and the stepchildren.

The factual findings of the trial court concerning the dependency of Michelle and the stepchildren are supported by the record and are not clearly erroneous.

Finally, we conclude that given the nature of the record in the present case, the trial court provided a reasoned decision in compliance with rule 11.

AFFIRMED.