IN RE INTEREST OF ALEX F. AND TONY F.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,
v. FLOYD F., APPELLANT, AND SHELLY F.,
APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed August 25, 2015.    No. A-14-883.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Due Process.** The determination of whether the procedures afforded an individual comport with due process is a question of law.
3. **Juvenile Courts: Jurisdiction: Child Custody.** Following an adjudication hearing at which a juvenile is adjudged to be under Neb. Rev. Stat. § 43-247(3)(a) or (c) (Supp. 2013), the court may order the Department of Health and Human Services to prepare and file with the court a proposed plan for the care, placement, services, and permanency which are to be provided to such juvenile and his or her family.
4. ____: ____: ____. A juvenile court may approve a proposed case plan, modify the plan, order that an alternative plan be developed, or implement another plan that is in the juvenile's best interests.
5. ____: ____: ____. Once a child has been adjudicated under Neb. Rev. Stat. § 43-247(3) (Supp. 2013), the juvenile court ultimately decides where a child should be placed. Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests.
6. **Juvenile Courts: Child Custody.** A juvenile court may always order a change in an adjudicated juvenile's custody and care, including placement, when the change is in the best interests of the juvenile.
7. ____: ____. When a juvenile is adjudged to be under Neb. Rev. Stat. § 43-247(3) (Supp. 2013), the court may permit such juvenile to remain in his or her own home subject to supervision or may make an order

- 196 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

committing the juvenile to the care and custody of the Department of Health and Human Services.

8. ____: ____. Under Neb. Rev. Stat. § 43-247(3) (Supp. 2013), a juvenile court may enter a dispositional order removing a juvenile from his or her home upon a written determination that continuation in the home would be contrary to the health, safety, or welfare of such juvenile and that reasonable efforts to preserve and reunify the family have been made if required.

9. **Juvenile Courts: Due Process.** Hearings regarding rehabilitative plans in juvenile cases are dispositional hearings, in which Nebraska rules of evidence do not apply, and due process safeguards at a disposition or detention hearing are less than those required at a hearing regarding the termination of parental rights.

Appeal from the County Court for Madison County: Ross A. Stoffer, Judge. Affirmed.

Ryan J. Stover, of Stratton, DeLay, Doele, Carlson & Buettner, P.C., L.L.O., for appellant.

Gail E. Collins, Deputy Madison County Attorney, for appellee State of Nebraska.

Mark D. Albin, of Albin Law Office, for appellee Shelly F.

Brad Easland, guardian ad litem.

Irwin, Inbody, and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Floyd F. appeals and Shelly F. cross-appeals from the order of the county court of Madison County, sitting as a juvenile court, which changed placement of their minor child Tony F. We find no merit to their arguments and therefore affirm the decision of the juvenile court.

## BACKGROUND

Floyd and Shelly are the biological parents of Alex F., born in 2001, and Tony, born in 2003. The Nebraska Department

- 197 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

of Health and Human Services (the Department) has received 18 reports of abuse and neglect involving this family dating back to October 2001. The concerns regarded inappropriate discipline, inappropriate supervision, the children being uncontrolled by their parents, the mental capacity of the parents, the children's hygiene, and the dirty and unsanitary conditions of the home.

The present case was commenced when Tony's school contacted police in November 2012 because he was uncontrollable. Tony was removed from the classroom by police and was determined to pose a safety risk to himself or others. Police placed him in emergency protective custody in the adolescent psychiatric unit of a local hospital. A subsequent visit to the home found its conditions to be unsanitary and unsafe for the children.

The following day, the State filed a petition to adjudicate the children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The petition alleged that Alex and Tony

> are juveniles who are in a situation dangerous to life or limb or injurious to the health or morals of the juveniles and/or who lacks [sic] parental care by reason of the fault or habits of their parents; and/or whose mother and father have neglected or refused to provide proper or necessary subsistence, education or other care necessary for the health, moral or well-being of the juveniles.

Specifically, the petition alleged that the parents have failed to provide a reasonably clean and safe residence, failed to provide reasonably clean and appropriate clothing, or failed to provide reasonably necessary food or medication for the children. Floyd and Shelly pled no contest to the allegations in the petition, and the children were adjudicated.

A review hearing was held in September 2014. The evidence presented indicated that although the children were initially placed in out-of-home care, they were placed back in the home in February 2013. At the time of the hearing, Tony was 10 years old and was verified for special education

- 198 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

services at school due to a behavioral disorder. He has a history of extreme aggression in the school setting, including running away, throwing rocks with the intent to hurt, throwing chairs, pulling computers off tables, banging his head, kicking, hitting, screaming, biting, and spitting. According to the Department, Tony struggles with authority in a setting where there are expectations, which is likely due to the fact that rules and expectations did not exist in the home before the Department's involvement.

Prior to February 2013, academic expectations for Tony were minimal and the school's main goal was to maintain order and avoid incidences of aggression. Tony began medication to assist with mood stabilization and aggression in January, and the school staff reported that the changes in Tony were dramatic. The last 4 months of the 2012-13 school year, Tony did all of the expected academic work and began to rebuild and repair relationships with his peers. His compliance declined significantly during periods that the medication was not given as prescribed, and the Department had to arrange for the administration of Tony's medication from November 1, 2013, until January 31, 2014, after discovering that he was not taking it.

At the time of the hearing, however, Tony had recently begun fifth grade at the middle school and was already struggling. He was asked to leave the classroom 4 out of the first 5 days of school and had an extreme, aggressive, and violent outburst on August 28, 2014, where he caused extensive damage to school property. The school expressed concern that Tony was not receiving his medication or was not receiving it timely.

The Department's report received into evidence at the hearing indicates that there are no rules, structure, or consequences for the children in the home. There are few expectations of Tony, and his parents do whatever is necessary to avoid conflict with him. The Department specifically noted that Floyd does not even try to make it appear there are rules

- 199 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

or consequences for Tony and that Floyd is not open to any suggestion regarding Tony's need to be held more accountable. According to the Department, Floyd and Shelly are setting Tony up for failure in other settings where there are structure, rules, and consequences, and this is especially true in school.

The Department's first case plan goal for Floyd and Shelly was for them to take care of their own mental health needs and be able to provide the children an environment which promotes positive emotional growth. Shelly attended individual therapy for 7 months and made some improvements. However, Floyd attended individual therapy for only a brief period of time before the therapy was terminated for his insistence that he was not going to change and did not have anything to work on. The therapist recommended that Floyd be assessed for depression to determine if he would benefit from medication, but he was not willing to do so. Similarly, Floyd only participated in a few sessions of family therapy and insisted it was a waste of time, even though the children and Shelly reported that it was helpful. Floyd was very vocal that Shelly was the problem in the home and that she needed to make changes, but that he had nothing to work on. Floyd never successfully completed an anger management class because, although he attended, he claimed that he did not need the service and did not have anything to work on. He turned his back to the presenter and slept or looked out the window during the class. While Shelly continued to cooperate and had attended every team meeting, Floyd had not attended any team meetings over the 6 months prior to the Department's report and was adamant that he did not intend to start.

The second case plan goal was for Floyd and Shelly to provide a safe and stable home environment for the children, which includes keeping the home free from debris and meeting the children's emotional needs. Floyd and Shelly took a parenting class in February 2013; Shelly received a certificate

- 200 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

of completion but Floyd did not, based on his behavior and lack of participation during the class. The cleanliness of the home continued to be an issue, and the family was asked to address the home's condition in June, July, and August 2014. The Department's report also noted that the children's hygiene has been maintained at a very minimal level.

In summary, the Department's report indicated that it had invested an extraordinary amount of resources into assisting this family in the nearly 2 years that Alex and Tony had been in its legal custody. The primary reason that the children were placed in the Department's custody was Tony's extreme behavior problems, with the conditions of the home being the second reason for removal. Tony's behaviors had seemed to improve with medication, but now that he is in middle school, it remains to be seen whether his new school will be as tolerant of his behaviors as the elementary school was. Tony is still struggling with the rules and structure of the school, after having no rules or expectations all summer while at home. The caseworker stated, "This is something that I talked endlessly with the family about over the summer, and something that the Department and providers have spent 2 years trying to address with the family." According to the Department's report, Shelly had learned the right tools and how to implement them, but her efforts were often futile because Floyd would send counterproductive messages, had made little effort to change anything, and would send negative messages to the children about school rather than encouraging them to do their best. After almost 2 years, it was clear to the caseworker that Floyd was not going to change.

Based on the foregoing, the Department's report recommended that a 3-month review be scheduled with the potential to close the case at that time due to a lack of progress in a family who was not amenable to services. At the hearing, however, the State noted that the Department's report was prepared prior to the incident Tony had at school on August 28,

2014, which incident colors the Department's recommendation. Based on the new incident, the State concluded that a 3-month review was inappropriate.

The court noted that almost 2 years into the case, Tony was only making minimal progress. But the court also noted that because Tony was only 10 years old, there was still time to correct his behavior and help him become a productive citizen in the future. The court identified its options as follows:

> There's no — absolutely no reason that I know of, no scientific reason, no other reason that I know of, that says that Tony is someone we should wash our hands of, that we cannot change Tony at all, that Tony should just be a forgotten soul, so to speak, and we should just give up on him. There's nothing that I know of that tells me that Tony can't change and we can't help Tony change.
>
> And there's where I'm at. I'm at the point of, you know, what do I do? Do I wash my hands of Tony and let him, you know, stay in the environment where he's at and let things keep going the way they are? Or do I grab the bull by the horns and say doggone it, Tony deserves better. I mean, we've got to do something to make things change for Tony. And what is that that we have to do?
>
> . . . I think one of the few things that we haven't tried is taking him out of the home.

Accordingly, the juvenile court found that the Department's case plan was not in Tony's best interests and modified the plan for Tony to be removed from the home. As such, the case plan was disapproved and the Department was ordered to find a foster home or group home for Tony. Floyd timely appeals, and Shelly cross-appeals.

## ASSIGNMENTS OF ERROR

On appeal, Floyd assigns that the juvenile court erred in disapproving the case plan court report and ordering the removal of Tony from the home.

- 202 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

On cross-appeal, Shelly also assigns that the juvenile court erred in disapproving the case plan court report and ordering the removal of Tony from the home.

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013). The determination of whether the procedures afforded an individual comport with due process is a question of law. *Id*.

## ANALYSIS

Floyd and Shelly argue that the juvenile court erred in disapproving the case plan and removing Tony from the home, because there was no motion before the court requesting a change and there was insufficient evidence presented to establish that a change was necessary. We disagree.

[3,4] Following an adjudication hearing at which a juvenile is adjudged to be under § 43-247(3)(a) or (c) (Supp. 2013), the court may order the Department to prepare and file with the court a proposed plan for the care, placement, services, and permanency which are to be provided to such juvenile and his or her family. Neb. Rev. Stat. § 43-285(2) (Cum. Supp. 2014). The court may approve the plan, modify the plan, order that an alternative plan be developed, or implement another plan that is in the juvenile's best interests. *Id*. Consequently, in the present case, the juvenile court was not required to approve the Department's proposed case plan recommending no change in Tony's placement and had the authority to disapprove the plan and order an alternative one.

[5,6] Section 43-285(2) provides that once a child has been adjudicated under § 43-247(3), the juvenile court ultimately decides where a child should be placed. Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests.

- 203 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

See *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). A juvenile court may *always* order a change in an adjudicated juvenile's custody and care, including placement, when the change is in the best interests of the juvenile. See *id*.

[7,8] Thus, in the present case, a motion requesting a change in Tony's placement was unnecessary. It was within the juvenile court's authority to disapprove of the Department's proposed plan and order an alternative one changing his placement, so long as it found that Tony's best interests were served by changing his placement, which it did. Once the juvenile court adjudicated Tony as a child within the meaning of § 43-247(3)(a), the court had jurisdiction over him and could determine his placement. Neb. Rev. Stat. § 43-284 (Cum. Supp. 2014) provides that when any juvenile is adjudged to be under § 43-247(3), "the court may permit such juvenile to remain in his or her own home subject to supervision or may make an order committing the juvenile to . . . (6) the care and custody of the Department." Similarly, under this section, the court may enter a dispositional order removing a juvenile from his or her home upon a written determination that continuation in the home would be contrary to the health, safety, or welfare of such juvenile and that reasonable efforts to preserve and reunify the family have been made if required. The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction. *In re Interest of T.T.*, 18 Neb. App. 176, 779 N.W.2d 602 (2009). As stated by the Nebraska Supreme Court:

> The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the code must be construed to assure the rights of all juveniles to care and protection. Once a child has been adjudicated under § 43-247(3), the juvenile court ultimately decides where a child should be placed. Juvenile courts are accorded broad discretion in

determining the placement of an adjudicated child and to serve that child's best interests.

*In re Interest of Karlie D.*, 283 Neb. at 592, 811 N.W.2d at 224-25. See, also, *In re Interest of Gabriela H.*, 280 Neb. 284, 785 N.W.2d 843 (2010) (stating juvenile court has authority to determine placement of juvenile under its jurisdiction even if such determination is contrary to Department's position).

The question then becomes whether the court abused its discretion in rejecting the Department's plan and ordering out-of-home placement for Tony.

The exhibits made clear that at the time of the September 2014 review hearing, Alex and Tony had been in the care and custody of the Department for 22 months and Tony was making little, if any, improvement. In fact, less than 2 weeks before the hearing, Tony had a significant, aggressive outburst at school. Despite intensive services provided to the family, it was clear that Floyd demonstrated a continued disregard for the severity of the situation and for the court's requirements. He repeatedly indicated that he would not comply and did not believe he needed to change. Tony was at home during the summer, and shortly into the new school year, he had already been asked to leave the classroom all but 1 day. The caseworker emphasized that Tony had no rules, structure, or expectations all summer, despite her repeated discussions with the family, and that he was struggling returning to the school environment. Moreover, Tony was just starting middle school, and it is unclear whether his new school will be as tolerant of his behaviors as the elementary school was. Thus, the juvenile court believed that allowing Tony to continue in the home would not be in his best interests.

At the time of the review hearing, the juvenile court believed it was at a crossroads in the case, with only two options: give up on Tony or take more drastic measures to try to help Tony make improvements in his behaviors. The court believed that because Tony was just 10 years old, there was time to get him more significant help in order to improve his behavior and,

- 205 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

ultimately, assist him to have a better future. Therefore, the court opined it was in Tony's best interests to change his placement, because allowing him to remain in the home was not benefiting him. Upon our de novo review, we find no abuse of discretion in this determination.

Floyd and Shelly also argue that when the juvenile court disapproved the case plan and removed Tony from the home without notice to the parties or the opportunity to be heard, their due process rights were violated. We find no merit to this argument.

Floyd and Shelly claim they had no notice that Tony might be removed from the home, because the adjudication petition that was filed was done so as a result of a "dirty house." Brief for appellant at 10. It is true the specific allegations of the adjudication petition were that the parents failed to provide a reasonably clean and safe residence for the children; however, the report that led to the filing of the adjudication petition was a result of Tony's being uncontrollable in the classroom and ultimately being taken to the adolescent psychiatric unit of a local hospital. In the 2 years following, Floyd and Shelly were offered services dealing with appropriate parenting skills and how to develop rules and structure in the home. The record does not contain any indication that Floyd or Shelly objected to these rehabilitation plans as being unreasonable or immaterial to the issues adjudicated.

In *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003), the child was adjudicated on the basis of an unclean house. Subsequent rehabilitation plans went far beyond education for the parents on how to maintain a clean house. The Nebraska Supreme Court stated that the "conditions observed in the house were only a symptom of the problems which led to the adjudication and the subsequent plans for reunification. They did not represent a situation which could be remedied by simply hiring a cleaning service." *Id.* at 164, 655 N.W.2d at 685. The parental rights were ultimately

- 206 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

terminated for failure to comply with the rehabilitation plan, and the decision was affirmed on appeal.

[9] Here, after the children were adjudicated, Floyd and Shelly had ample notice, through the services offered, that more than just a dirty house was at issue. We have held that hearings regarding rehabilitative plans in juvenile cases are dispositional hearings, in which Nebraska rules of evidence do not apply, and due process safeguards at a disposition or detention hearing are less than those required at a hearing regarding the termination of parental rights. See *In re Interest of Daniel W.*, 3 Neb. App. 630, 529 N.W.2d 548 (1995), *reversed on other grounds* 249 Neb. 133, 542 N.W.2d 407 (1996). Given the notice provided to Floyd and Shelly of the issues to be corrected, we conclude that Floyd's and Shelly's due process rights were not violated.

Finally, Shelly asserts that her due process rights were violated when the juvenile court failed to follow proper statutory procedures when removing Tony from the home. She claims that Neb. Rev. Stat. § 43-248 (Cum. Supp. 2014) applies in principle in this case and that there were no findings any of the grounds set forth in § 43-248 were met.

Section 43-248 sets forth the procedures for when a peace officer may take a juvenile into temporary custody without a warrant or court order. This statute describes preadjudication detentions, however. See *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). And thus, it does not apply in the present case because Tony had already been adjudicated under § 43-247(3)(a) (Reissue 2008) and was in the legal custody of the Department. As stated above, a juvenile court may always change the placement of an adjudicated juvenile when such change would be in the juvenile's best interests. See *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

Shelly also asserts that when the juvenile court entered its order removing Tony from the family home, no findings were made that the child was in danger for his health, safety, or

- 207 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF ALEX F. & TONY F.
Cite as 23 Neb. App. 195

welfare as required by § 43-284. Contrary to Shelly's argument, the court's order of September 9, 2014, found that continuation of the juvenile in his home would be contrary to the welfare of the juvenile and that reasonable efforts were made to prevent or eliminate the need for removal. As such, we reject her arguments and find no violation of her due process rights.

## CONCLUSION

Upon our de novo review, we conclude that the juvenile court did not abuse its discretion in disapproving the case plan and ordering the Department to locate a foster or group home for Tony. We therefore affirm.

AFFIRMED.